United States District Court
Middle District of Florida
Tampa Division

**ANTONIO VIVERETTE,**

 *Plaintiff,*

v.              No. 8:18-cv-2773-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

# Order

Antonio Viverette brings this action under 42 U.S.C. § 1383(c) to review a final decision of the Commissioner of Social Security denying his application for benefits. Under review is a decision by an Administrative Law Judge ("ALJ") dated January 30, 2018. Tr. 15–31. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 15–31, and the parties' briefs, Docs. 18, 21, and not fully repeated here. Viverette contends the ALJ erred at step five of the five-step sequential process, including by finding jobs of final assembler and check weigher exist in significant numbers in the national economy. Doc. 18.

## Background

In October 2017, the ALJ conducted a hearing at which a vocational expert ("VE") testified. Tr. 36–60. The ALJ asked the VE if the resume in the file was a true description of her professional qualifications; the VE answered "Yes"; and Viverette's attorney had no objection to the VE testifying as an expert. Tr. 50. According to the resume, the VE has a Doctorate of Education; is a certified rehabilitation counselor, national certified counselor, and mental-health counselor; was a VE for the Social Security Administration from 2002 to 2012; and, through the time of the hearing,

worked as a professor at two universities in counseling and professional studies and education. Tr. 328.

The ALJ asked the VE this hypothetical:

> [P]lease assume a hypothetical individual of Claimant's age, education and no past relevant work. Further assume the individual is limited to a sedentary exertional level. I'm going to say no operation of foot controls with the left leg, no climbing ladders and scaffolds, occasional climbing ramps and stairs, occasional stooping, kneeling, crouching and crawling, no work at unprotected heights, no operating a motor vehicle, mentally limited to simple, routine and repetitive tasks, making simple work-related decisions, frequent interaction with supervisors, coworkers and the general public. Based on that hypothetical, is there work such an individual can perform?

Tr. 51.

The VE identified three jobs:

> [T]he first is a document preparer, the [Dictionary of Occupational Titles ("DOT")] code 249.587-018. It has an SVP level 2 and unskilled, sedentary exertional demand. In the United States, there are approximately 104,000 positions.
>
> A second example is a final assembler, the DOT code 713.687-018. It has an SVP level of 2 and is sedentary. In the United States, there are approximately 7,000 positions. And a third example is a check weigher. The DOT code is 737.687-026. It has an SVP level of 2 and is sedentary. In the United States, there are approximately 14,000 positions.

Tr. 51.

The ALJ asked if the VE's testimony was consistent with the DOT, and the VE answered, "Your Honor, the DOT does not specifically address interaction with supervisors, coworkers in the job, so that portion of my testimony is based on my experience." Tr. 51–52.

Viverette's counsel asked the VE about the basis for the job numbers, and the VE responded:

> ATY  I want you to assume that the reasoning level in hypothetical 1 has to be a 1 or 2, but it can't be a 3. Do any of these jobs have a reasoning level of 3?[1]
>
> VE  Yes, the document preparer does. The other two are reasoning level 1.
>
> …
>
> ATY  The check weigher job, I'm looking at the Bureau of Labor Statistics Crosswalk.[2] It looks like that's under the specific occupational code of 519061. Would you check and see if you agree with that?
>
> VE  I don't have that handy. It would take me about 10 minutes to look that information up. I do use the Crosswalk, but I had these jobs already classified.
>
> ATY  Okay. Well, could you explain to us – there's a code. The Bureau of Labor Statistics uses a SCO [sic] code.
>
> VE  That is correct.
>
> ATY  And there could be many DOT occupations within that broad code?
>
> VE  It would depend on the code but yes. That's correct. There's no information that provides numbers directly by DOT code, so it's based on the Census and SOC [2018 Standard Occupational Classification] codes.[3]

---

[1]The DOT assigns jobs a reasoning level, with one the lowest and six the highest. DOT, App'x C, 1991 WL 688702 (4th ed. rev'd 1991).

[2]The Bureau of Labor Statistics explains, "The Employment Projections (EP) program publishes the classification systems used to produce the employment projections. In addition, EP publishes selected crosswalks between EP employment projections and data from other sources." *Employment Projections*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/emp/documentation/crosswalks.htm (last visited March 20, 2020).

[3]The Bureau of Labor Statistics explains,

3

ATY   Okay. So how do we come up with the number of check weigher jobs if we start with the Bureau of Labor Statistics' total jobs within that SOC number?

VE   The source that I use breaks the numbers down by skill and exertional level to get the approximate number for that DOT code.

ATY   And what source is that?

VE   The Occupational Employment Quarterly.[4]

ATY   Okay. But the Occupational Employment Quarterly doesn't break it down by DOT number. It breaks it down by the SOC number, right?

VE   Correct, but it is further broken down by skill and exertional level.

ATY   Okay. So there may be a number of jobs that are sedentary, unskilled jobs within that SOC classification. Is that correct?

VE   That is correct.

---

> The SOC system is a federal statistical standard used by federal agencies to classify workers into occupational categories for the purpose of collecting, calculating, or disseminating data. All workers are classified into one of 867 detailed occupations according to their occupational definition. To facilitate classification, detailed occupations are combined to form 459 broad occupations, 98 minor groups, and 23 major groups. Detailed occupations in the SOC with similar job duties, and in some cases skills, education, and/or training, are grouped together.

*Standard Occupational Classification*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/soc/ (last visited March 20, 2020).

The code Viverette's counsel identified, 51-9061, is titled "Inspectors, Testers, Sorters, Samplers, and Weighers." *2018 Standard Occupational Classification System*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/soc/2018/major_groups.htm#51-0000 (last visited March 20, 2020). The job description is: "Inspect, test, sort, sample, or weigh nonagricultural raw materials or processed, machined, fabricated, or assembled parts or products for defects, wear, and deviations from specifications. May use precision measuring instruments and complex test equipment." *Id*. Next to "Illustrative examples," it lists "Machined Parts Quality Inspector, Petroleum Sampler." *Id*.

[4]According to the website that sells the Occupational Employment Quarterly, the program uses data from the Bureau of Labor Statistics and Census Bureau. *Occupational Statistics*, U.S. PUBLISHING, https://uspublishing.net/references.html (last visited March 20, 2020).

4

> ATY   So does the 14,000 represent the total number of sedentary unskilled jobs or just that one particular DOT number?
>
> VE    That would be total of sedentary unskilled within that SOC code.
>
> ATY   So the check weigher job is an example of one of a number of jobs? Is that correct?
>
> VE    Possibly. It would depend on the SCO code how many DOT codes would be within that one code.
>
> ATY   Well, I'm counting 782 total jobs, DOT numbers, in that SOC code. Some of them are sedentary. Some may be light. Some may be medium.
>
> VE    That sounds incredibly high. I'm not aware of any that have that many DOT codes within one central code.
>
> ATY   Well, I've got the Crosswalk in front of me, and I checked it and there's 782. But I guess we can double check later. So the next – so what you're saying is there may not be 14,000 check weigher jobs?
>
> VE    It's an approximate number. There's no source that provides numbers specifically by DOT code, so we're utilizing the best information we have available.
>
> ATY   Do you know of any other DOT numbers within that SOC code that meet the criteria of a reasoning level of 1 or 2, sedentary, unskilled?
>
> VE    I do not.

Tr. 52–55.

> Viverette's counsel continued:
>
> ATY   [L]et's assume there was a sedentary, unskilled job in SOC code 519061. Would that be part of the numbers under the Occupational Employment Quarterly that – where you came up with the 14,000?
>
> VE    I'm sorry. Can you repeat the question? []
>
> ATY   How do we know that there are 14,000 occupations with a reasoning level of less than 3?
>
> VE    I believe I already answered that. My source breaks down the numbers by skill and exertional level and is recognized by the SOC and

5

Census code because there is not a source that provides numbers directly by DOT code. 14,000 is an approximate number.

ATY What about the reasoning level? Does it break it down by reasoning level?

VE It does not.

ATY So part of that 14,000 could be other jobs with a reasoning level of higher than 2. Is that correct?

VE That is correct. It would be unskilled, SVP 1 or 2, but the reasoning level is not included.

ATY Okay. I'm looking at the check weigher job, and it says ordinance and accessories. This is not like a check, like a bank check. This is like they weigh like gunpowder, right?

VE That's correct.

ALJ And what industry is that?

VE [Inaudible]. I've also seen this job done at a GNC where they were weighing powders of nutrition supplements, so they're taking the powder in a small cup and checking the weight before it's packaged and shipped.

ATY So if we look at the Bureau of Labor Statistics, and we look at the SOC code and we look at the industry, it'll tell us what industries, at least the top 5 industries where that – the occupations in that SOC code can be found. Is that correct?

VE Yes. Correct. They're typically grouped with SOC titles, so they're in categories, not necessarily industry but based on the type of the occupation.

ATY Okay.

VE So all engineers would be grouped together. All attorneys would be grouped together. It varies.

Tr. 55–56.

The ALJ interjected, and counsel finished questioning the VE:

6

ATY   The Occupational Employment Statistics, the latest publication, says that the employment in that particular SOC is 518,000. Now I'm looking at the publication from May of 2016. Can you obtain that[?][5]

VE   I'm not sure what you're referencing. Is it Bureau of Labor Statistics data from 2016?

ATY   Yeah. It's the Occupational Employment and Wages Report. … The question is, does that give you the industries where you would find the occupations, the DOT occupations[?]

VE   I don't have that in front of me here. The Bureau of Labor Statistic publishes numerous studies regarding jobs and wages and all kinds of information. It would take me quite a while to pull that up. My Occupational Employment Quarterly, where my numbers are from, is from the second quarter, 2017. I believe it's the most up to date information that's available.

ATY   Okay. … If I could do a supplemental hearing, and I'd like to do an argument and then possibly –

ALJ   Why don't you submit a memorandum?

ATY   Okay.

ALJ   Post-hearing.

ATY   I could submit a memorandum.

ALJ   Yes, sure. I'd be happy to leave it open. What do you think, a couple weeks?

ATY   I can finish it up in two weeks.

ALJ   Okay. Wonderful. …

---

[5]The Bureau of Labor Statistics explains the Occupational Employment Statistics is a program that "produces employment and wage estimates annually for over 800 occupations. These estimates are available for the nation as a whole, for individual states, and for metropolitan and nonmetropolitan areas; national occupational estimates for specific industries are also available." *Occupational Employment Statistics*, U.S. BUREAU OF LABOR STATISTICS, https://www.bls.gov/oes/ (last visited March 20, 2020).

7

Tr. 58–59.

No follow-up memorandum is in the record.[6] The ALJ adopted the hypothetical from the hearing as Viverette's residual functional capacity ("RFC"), Tr. 21, and found Viverette could perform the three jobs the VE had identified based on the VE's testimony and they exist in significant numbers in the national economy, Tr. 30–31. The ALJ stated,

> Pursuant to 00-4p, the undersigned has determined that the [VE]'s testimony is consistent with the information contained in the [DOT]. Based on the testimony of the [VE], the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 31.

---

[6]Viverette's attorney did later file a brief in support of the request to reconsider the ALJ's decision to the Appeals Council. Tr. 333–61. He objected to the finding that the final-assembler job exists in significant numbers in the national economy. Tr. 334. The Appeals Council found no reason to review the ALJ's decision and denied the request for review. Tr. 1–6.

In the brief, Viverette's attorney argued:

The claimant also objects to a finding that the job of final assembler, DOT number 713.687–018 exists in significant numbers in the national economy. According to the North American Industry Classification System (NAICS) the standard used by federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing and publishing statistical data related to the US business economy, the classification number for ophthalmic goods manufacturing is 339115. Attached is a copy of information from the NAICS supporting this assertion. According to the U.S. Census county business patterns, there were 24,910 paid employees in the ophthalmic goods manufacturing industry in 2014. These jobs include contact lens manufacturing, eyeglass frames manufacturing, goggles manufacturing, lens coating, lens grinding, lens mounts, etc. Not all jobs in the ophthalmic goods manufacturing industry are production workers.

Tr. 334.

The "county business pattern" documents attached to the brief here, Docs. 18-1, 18-2, appear to be in the record as part of the brief to the Appeals Council at Tr. 341 and Tr. 351, but the copies in the record are too unclear to verify.

## Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks and alteration omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* "Substantial evidence … is more than a mere scintilla. … It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

The substantial-evidence standard applies only to factual findings. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). "The Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quoted authority and alterations omitted).

"[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). If "remand would be an idle and useless formality," a reviewing court need not "convert judicial review of agency action into a ping-pong game." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).

Where the Appeals Council has denied review, a reviewing court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

**Law & Analysis**

Viverette contends the VE's testimony regarding the number of final-assembler and check-weigher jobs is unreliable and provides no reasonable estimate of the actual job numbers. Doc. 18 at 9–12. In essence, he contends substantial evidence does not support the ALJ's finding that those jobs exist in significant numbers in the national economy.

To decide whether a person is disabled, the Social Security Administration ("SSA") uses a five-step sequential process, asking whether (1) he is engaged in substantial gainful activity, (2) he has a severe impairment or combination of impairments, (3) the impairment or combination of impairments meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) he can perform any of his past relevant work given his RFC, and (5) there are a significant number of jobs in the national economy he can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4).

The claimant has the burden of persuasion through step four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show the claimant can perform other jobs that exist in significant numbers in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). If the Commissioner satisfies that burden, the burden shifts back to the claimant to show he cannot perform the jobs identified by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

An ALJ may use a VE's testimony for the step-five finding. 20 C.F.R. § 416.966(e); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

For a VE's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes the claimant's impairments. *Winschel*, 631 F.3d at 1180. A VE's testimony can be substantial evidence "even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155.

The SSA "consider[s] that work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s] are not considered 'work which exists in the national economy.'" 20 C.F.R. § 416.966(b). The Eleventh Circuit "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 934–35 (11th Cir. 2015).

The SSA "will take administrative notice of reliable job information available from various governmental publications," including the DOT, county business patterns and census reports published by the United States Census Bureau, occupational analyses prepared for the SSA by state agencies, and the Occupational Outlook Handbook published by the Bureau of Labor Statistics. 20 C.F.R. § 416.966(d)(1)–(5).

"The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number." *Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005). "The question … is not whether the expert's *testimony* is supported by substantial evidence. It is whether the ALJ's *decision* is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (emphasis in original); *see Tisdale v. Soc. Sec. Admin. Comm'r*, No. 19-12030, 2020 WL 1243642, at *5 (11th Cir. Mar. 16, 2020) (unpublished) ("The ALJ's finding that the [VE's] testimony was reliable and consistent with the DOT was supported by substantial evidence."); *Olney v. Comm'r of Soc. Sec.*, No. 2:17-cv-349-

FtM-29CM, 2018 WL 4760799, at *14 (M.D. Fla. July 30, 2018) (unpublished), *report and recommendation adopted*, 2018 WL 4357134 (unpublished) ("[A]lthough the job number data presented by Plaintiff could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one.").

For the final-assembler job, Viverette contends the VE's opinion that there are 7,000 such jobs is unreasonable "based on governmental publications which are cited in the Social Regulations as a source for vocational information." Doc. 18 at 9. He attaches a printout of county business patterns from the Census Bureau website. Doc. 18-2. The printout shows that in the United States in 2016, there were 24,988 "paid employees for pay period including March 12" under the "ophthalmic goods manufacturing" industry code.[7] Doc. 18-2.

Viverette states the DOT shows 25 different "occupations in the optical goods manufacturing industry … rang[ing] from sedentary to medium [with] different skill levels."[8] Doc. 18 at 10. He contends the 24,988 jobs from the county business pattern "covers 25 occupations in the ophthalmic manufacturing industry," and though "there is no precise way to come up with the number of jobs in a particular DOT occupation," the VE here made no reasonable estimate. Doc. 18 at 10. He contends the number the VE gave "appears to have been given for a broad category of jobs with similar characteristics of which final assembler … was one," but the other jobs in that

---

[7]Viverette cites a document he had attached to his request for review to the Appeals Council, stating the document shows "five subcategories under [the manufacturing ophthalmic goods] code. They include surgical and medical instrument manufacturing, surgical implants and supplies manufacturing, dental equipment and supplies manufacturing, ophthalmic goods manufacturing, and dental laboratories." Doc. 18 at 10 (citing Tr. 350). That information does not appear to be on that transcript page.

[8]Again, Viverette cites Tr. 350 as a document showing that information, but it does not.

12

category may have less restrictive RFC limitations Viverette cannot perform, and the number of those jobs is unknown. Doc. 18 at 11.

For the check-weigher jobs, Viverette contends the VE's testimony is "equally unreliable" for the same reasons. Doc. 18 at 11. He attaches another county-business-pattern printout from the Census Bureau website. Doc. 18-1. The printout shows that in the United States in 2016, there were 5,980 "paid employees for pay period including March 12" under the "explosives manufacturing" industry code. Doc. 18-1. He again contends the VE appears to have given numbers for a group of jobs, of which check weigher is one example, though the other jobs may have less restrictive RFCs and Viverette therefore could not perform them. Doc. 18 at 12.

Viverette contends the VE should be asked if any job numbers given are for one DOT occupation "or for a group of similar occupations of which the particular [DOT] occupation is a representative sample," and if a sample, to estimate numbers only for the given DOT occupation or identify the DOT numbers for other included jobs. Doc. 18 at 12.

In three unpublished opinions, the Eleventh Circuit has recently addressed whether substantial evidence supports an ALJ's findings on job numbers. *See Webster v. Comm'r of Soc. Sec.,* 773 F. App'x 553, 555–56 (11th Cir. 2019) *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674–75 (11th Cir. 2019); *Zoslow v. Comm'r of Soc. Sec.*, 778 F. App'x 762, 765–66 (11th Cir. 2019).

In *Webster*, the plaintiff argued the VE's job numbers were inconsistent with numbers from the Bureau of Labor Statistics. *Webster*, 773 F. App'x at 554. The court found the VE's testimony, based on personal experience conducting surveys, industry knowledge, and the DOT, constituted substantial evidence supporting the ALJ's finding there were a significant number of jobs the plaintiff could perform. *Id.* at 555. The court rejected the plaintiff's argument that job numbers by SOC code from the Bureau of Labor Statistics showed the VE's testimony was unreliable, observing the

13

plaintiff "did not question the VE's qualifications and the questions that he posed to the VE did not address his present concerns about the reliability of the VE's testimony. Moreover, the VE's testimony indicated that he relied on his own experience of surveying employers as well as the DOT." *Id.* The court observed the Eleventh Circuit "has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics]." *Id.* at 556.

In *Wooten*, the plaintiff argued the VE overestimated job numbers for a final-assembler job when compared to data from county business patterns, which the plaintiff presented for the first time to the district court. *Wooten*, 787 F. App'x at 674. The court rejected the plaintiff's argument, stating, "[T]he only evidence presented to the ALJ … was the interrogatory response of the [VE], in which the [VE] stated that 235,000 of those jobs existed nationwide. Wooten didn't present the County Business Patterns evidence before the ALJ, nor did she object to or question the ALJ's estimation." *Id.* at 675. The court ruled substantial evidence supported the ALJ's findings regarding job numbers based on the VE's "uncontradicted testimony." *Id.*

In *Zoslow*, the plaintiff argued the ALJ erred in relying on the VE's testimony regarding the number of final-assembler jobs. *Zoslow*, 778 F. App'x at 763, 766. (The decision provides no further detail on the argument). The court rejected the plaintiff's argument, observing an ALJ may rely on a VE's testimony, the ALJ posed the necessary hypothetical with the plaintiff's impairments, and the VE's testimony therefore constituted substantial evidence. *Id.* at 766.

Here, substantial evidence supports the ALJ's findings that the final-assembler and check-weigher jobs exist in significant numbers in the national economy. The VE, an expert, provided the basis for her numbers, explained how she adjusted match data from the Bureau of Labor Statistics to a DOT occupation, and twice referenced her experience in determining job information (once when referring

14

to the limitation on interaction with supervisors, *see* Tr. 52, and once when discussing that she has seen the check-weigher job performed in other ways outside of explosives manufacturing, *see* Tr. 56). The ALJ may and did rely on that testimony to support his finding that the final-assembler and check-weigher jobs exist in significant numbers in the national economy, and the VE's testimony here constitutes substantial evidence supporting the finding.

Viverette includes county business patterns as attachments to the brief and references vocational information in a transcript cite from a brief to the Appeals Council, but the transcript information he cites is not listed on the transcript page, and the Court must consider evidence presented to the ALJ only, *see Falge*, 150 F.3d at 1323, and not any county business patterns presented for the first time to the district court, *see Wooten*, 787 F. App'x at 675. Viverette had an opportunity to present the information to the ALJ in a supplemental memorandum and did not. Even considering those documents, Viverette "assumes that all of the jobs the VE identified were limited to two industries" (ophthalmic-goods manufacturing and explosives manufacturing) but the VE testified jobs were "not necessarily" based on "industry but based on the type of the occupation," citing the specific example that she had seen the check-weigher job performed at a nutrition store for weighing powder supplements. *See* Doc. 21 at 7 (citing Tr. 56).

The cross-examination by Viverette's counsel does not undermine that the VE's testimony provides substantial evidence supporting the ALJ's findings on job numbers.[9]

---

[9]The Commissioner states, "Plaintiff did not question the VE's qualifications. Nor did Plaintiff cross-examine the VE regarding the Census' NAICS and County Business Patterns Data. Instead, Plaintiff's counsel questioned the VE extensively on the employment numbers that the VE derived from the Bureau of Labor Statistics Occupational Employment Quarterly and SOC codes, but did not raise any specific complaints about the VE's reliance on these data sources in his brief, thereby waiving any such argument on appeal." Doc. 21 at 9 (internal citations omitted). While Viverette relies on the brief attachments to support his arguments, he references the VE's testimony and contends the VE appeared to give numbers

The question is not whether substantial evidence supports the VE's testimony but whether the VE's testimony constitutes substantial evidence to support the ALJ's finding, even if other evidence might preponderate against it. The VE is an expert with an understanding of job numbers in the national economy, and an ALJ may rely on a well-qualified VE's testimony for step-five findings, Doc. 21 at 11–12. The VE testified she had calculated the job numbers after further breaking down group numbers by skill and exertional level to get the approximate number for the DOT occupation, Tr. 53, and counsel's hypothetical question regarding whether numbers might include jobs with a reasoning level higher than 1 or 2, Tr. 55–56, was speculative and does not otherwise undermine the VE's testimony constituting substantial evidence. For the check-weigher job, she testified she knew of no other DOT codes within an SOC code that met the criteria of having a reasoning level of 1 or 2 and being sedentary and unskilled, Tr. 55.

Viverette quotes *Carpenter v. Astrue*, 537 F.3d 1264 (10th Cir. 2008), in which the court explained, "We note for consideration on remand that Mrs. Carpenter correctly asserts the VE identified categories of jobs rather than specific jobs in the [DOT], and neither the ALJ nor the VE considered all of the requirements of any particular job. The ALJ is obligated to explain conflicts between a VE's testimony and a job description in the DOT, however, and therefore must elicit enough vocational evidence for this court to determine whether there is a conflict." Doc. 18 at 11.

As the Commissioner observes, Doc. 21 at 7, the VE in *Carpenter* identified no specific job in the DOT and its requirements, while the VE here identified three jobs, and substantial evidence supports the ALJ's step-five findings as discussed.[10]

---

for bigger groups and not DOT occupations, so addressing counsel's cross-examination in conjunction with the VE's testimony is warranted.

[10]Courts have reached different results when considering the issue of possibly overstated job numbers for a DOT occupation because of job groupings from Bureau of Labor Statistics sources. *Compare, e.g.*, *Grome v. Comm'r of Soc. Sec. Admin.*, 8:18-cv-2084-T-MCR, 2019 WL 4594597, at *4–6 (M.D. Fla. Sept. 23, 2019) (unpublished) (finding substantial

Viverette states, "The ALJ cannot check to make sure there is no conflict between the [DOT] and the other occupations contemplated by the VE when estimating his or her numbers." Doc. 18 at 12. The ALJ has no affirmative duty to investigate conflicts between a VE's testimony and job numbers (at least from the Occupational Employment Statistics from the Bureau of Labor Statistics). *Webster*, 773 F. App'x at 556.

Viverette does not argue that, assuming the VE's job numbers were not overstated, those numbers (7,000 for final assembler and 14,000 for check weigher, for a total of 21,000 jobs) do not constitute a significant number of jobs. *See generally* Doc. 18. And nothing suggests otherwise.[11] *See Atha*, 616 F. App'x at 934–35 (440 jobs in the state and 23,800 jobs nationally constituted significant numbers in the national economy).

---

evidence supported ALJ's step-five findings because plaintiff never questioned VE regarding job numbers, Occupational Employment Statistics is not listed as source for ALJ to administratively notice, and ALJ may rely on VE's testimony), *and Guitano v. Colvin*, 546 F. App'x 137, 141–43 (4th Cir. 2013) (finding step-five findings supported by substantial evidence because no job source provides job numbers by DOT job on updated basis so Commissioner otherwise could never meet burden, and, even assuming job numbers were overinclusive, smaller numbers would still be "significant"), *with Groettum v. Comm'r of Soc. Sec.*, No. 2:17-cv-611-FtM-29CM, 2019 WL 488260, at *14–15 (M.D. Fla. Jan. 7, 2019) (unpublished), *report and recommendation adopted*, 2019 WL 290598 (unpublished) (remanding for many issues, including to reconsider ALJ's step-five findings of job numbers where VE testified on cross-examination she did nothing to eliminate other DOT jobs from groupings provided by Bureau of Labor Statistics and used no personal knowledge or expertise), and *Boston v. Colvin*, No. 4:14-cv-206-D, 2016 WL 721563, at *9–17 (E.D.N.C. Feb. 2, 2016) (unpublished), *report and recommendation adopted*, 2016 WL 738762 (remanding for reconsideration of VE's testimony where VE provided job numbers based only on Occupational Employment Quarterly, made no adjustments based on experience or otherwise, testified she did not know how many jobs actually existed for each DOT occupation, and provided no testimony that "photofinishing counter clerk" remains a "viable occupation in the current economy").

None are binding here, and each ruling was based on the specific facts of the case.

[11]Because the Court finds the VE's testimony constituted substantial evidence supporting the ALJ's findings on job numbers, the Court need not decide whether a reduced number of jobs to account for some possible error would still amount to a significant number of jobs. *See* Doc. 21 at 13–14.

Remand to reconsider the ALJ's step-five findings on job numbers for final assemblers and check weighers is unwarranted.[12]

**Conclusion**

The Court affirms the Commissioner's decision and directs the clerk to enter judgment for the Commissioner and against Antonio Viverette and close the file.

**Ordered** in Jacksonville, Florida, on March 23, 2020.

PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:      Counsel of record

---

[12]Viverette also contends the document-preparer job is inconsistent with the limitations to "simple, routine, and repetitive tasks" and "simple work-related decisions" because it has a reasoning level of three. Doc. 18 at 6–9.

The Commissioner does not concede there is a conflict but contends the Court need not address the issue because the other two jobs the VE identified—final assembler and check weigher—have a reasoning level of 1, which is consistent with the RFC here (Viverette does not contend otherwise), and those jobs exist in significant numbers in the national economy. Doc. 21 at 4–5.

The Eleventh Circuit "has not yet decided in a published opinion whether a limitation to simple, routine, repetitive work is inconsistent with a job that requires a General Education Development reasoning level of three." *Wooten*, 787 F. App'x at 674. Even if the ALJ erred in finding Viverette could perform a job with a reasoning level of 3, the Court need not decide the issue. Because the other two jobs of final assembler and check weigher exist in significant numbers in the national economy (21,000 total), any error is harmless and remand would be a "useless formality," *see* N.L.R.B. 394 U.S. at 766 n.6 (quoted). *See also Wooten*, 787 F. App'x at 674 (declining to address whether the plaintiff's RFC was consistent with a reasoning level of 3 for the document-preparer job because substantial evidence supported that job numbers existed in significant numbers in the national economy for the final-assembler job with a reasoning level of 1).

18